**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| HUBERT CHAMPAGNE, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-299 |
| | § | |
| TETRA APPLIED TECHNOLOGIES INC., et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING DEFENDANT TOBIAS, INC.'S MOTION FOR SUMMARY JUDGMENT**

This case arises out of injuries allegedly sustained by Plaintiff while being transported via personnel basket from the deck of the M/V MS JUDY ("MS JUDY") to a stationary drilling platform located on the Outer Continental Shelf. Defendant Tobias, Inc. ("Tobias") owned the MS JUDY at the time of the accident, and is the present owner of the vessel. Now before the Court is Tobias' Motion for Summary Judgment. For the following reasons, Tobias' Motion is **DENIED**.

## I. Background

Hubert Champagne, Jr. ("Plaintiff"), a Halliburton employee, alleges that he sustained injuries to his back, neck, and body on or about January 12, 2003, while making a personnel basket transfer from the deck of the MS JUDY to the Exxon Platform located at Galveston 209 OSG-3229 ("platform") offshore of Texas on the Outer Continental Shelf. The MS JUDY is a supply vessel, and on the date of the alleged accident Plaintiff was being transported by the MS JUDY to Exxon's platform in the Gulf of Mexico. Plaintiff testified in his deposition that when the MS JUDY departed for the platform, it was raining and there appeared to be four to six foot seas. By the time the vessel reached the platform,

Plaintiff testified that the seas had increased to approximately seven to eight feet and the winds were blowing approximately 30 miles per hour.

In his deposition, Plaintiff gave contradictory accounts of the circumstances surrounding his alleged accident. He first testified that he did not have any problems transferring, and that he was not concerned that the weather and sea conditions were too rough to safely transfer from the MS JUDY to the platform. During the deposition, Plaintiff stated that he did not have any criticism of the manner in which the crew of the MS JUDY made the transfer. However, Plaintiff also testified that he was injured when the personnel basket that he was transferred in was "jerked off the boat" when it was lifted. Plaintiff described the movement as a "massive jerk." Plaintiff attributed the alleged jerking of the personnel basket to a combination of the crane operator (who controlled the personnel basket) and the movement of the MS JUDY. Tobias argues that Plaintiff did not feel severe pain until January 14, 2003, two days after the transfer, and that he did not attribute his alleged injuries to the personnel basket transfer until he had undergone approximately five months of medical care. Additionally, Tobias claims that Plaintiff first felt severe pain after he had engaged in strenuous lifting and other regular work activities that took place on the platform. All of the defendants in this action, including Tobias, deny the occurrence of the accident during the personnel basket transfer and any injuries allegedly resulting therefrom.

In his Complaint, Plaintiff asserts a general negligence claim under admiralty law, and alleges five theories of defendants' negligence. First, in allowing a transfer from the MS JUDY to the platform under hazardous weather and sea conditions. Second, in employing or directing the crane operator on the platform to move the personnel basket containing Plaintiff from the MS JUDY to the platform. Third, in failing to properly supervise and direct the crane operator in a manner that would insure the safe movement of the personnel basket. Fourth, in failing to delay the transfer until weather conditions

were such that the transfer could be made safely. Finally, in failing to communicate to the captain of the MS JUDY that operations should be shut down until such time when the weather conditions would allow safe transport.

Now before the Court is Tobias' Motion for Summary Judgment, filed on November 16, 2005. After thoughtfully considering the Motion, Plaintiff's Response thereto, the relevant evidence, and the applicable law, the Court concludes that Tobias' Motion for Summary judgment must be respectfully **DENIED**.

## II. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied* 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See id.* at 255, 106 S. Ct. at 2513.

**III. Analysis**

In its Motion for Summary Judgment, Tobias argues that Plaintiff's claims for negligence against it must fail because Plaintiff's deposition testimony is dispositive of his allegation that Tobias, by and through its crew, was negligent in permitting the personnel basket transfer to take place when it was unsafe to do so. Specifically, Tobias asserts that Plaintiff's testimony demonstrates that Tobias did not breach its duty of reasonable care under the circumstances as a matter of law because he admitted that the sea and weather conditions were not too dangerous to perform the transfer safely. In his response, Plaintiff argues, first, that under general maritime law, the correct standard for duty of care is a high degree of care rather than "reasonable care under the circumstances," and that Tobias did not exercise a high degree of care. Second, that there is a genuine issue of material fact as to the roughness of the weather and sea conditions at the time of the transfer, notwithstanding Plaintiff's deposition testimony.

*A. Duty of Care Owed By a Shipowner To a Passenger*

The first point of contention between the Parties is the appropriate standard of care owed by a shipowner to a passenger in a negligence claim brought under general maritime law. To prevail against Tobias, Plaintiff must prove: (1) the existence of a duty owed by the shipowner or operator; (2) breach of the duty; (3) proximate cause; and (4) injury and damages. *See* THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 5-5 (4th ed. 2004). In the Fifth Circuit, it is well-established that "a shipowner owes to passenger the duty of exercising 'reasonable care under the circumstances of each case.'" *Smith v. Southern Gulf Marine Co. No. 2*, 791 F.2d 416, 421 (5th Cir. 1986) (quoting

*Kemerac v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S. Ct. 406, 410, 3 L. Ed. 2d 550 (1959)). The "circumstances" to be considered include "the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers." *Id.* In *Smith*, *supra*, the Fifth Circuit noted that in some circumstances "reasonable care" may constitute a "very high degree of care" and in others, "something less." *Id.* (quoting *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169 (2d Cir. 1983)).

Plaintiff argues that the appropriate standard in this context is a high degree of care, and relies upon the Eleventh Circuit's pronouncement in *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309 (11th Cir. 2003), holding that "a high degree of care is demanded of common carriers toward their passengers" and that "even the 'slightest negligence' renders a carrier liable." *Id.* at 1319–20. The central issue presented to the Eleventh Circuit in *Vierling* was whether the Supreme Court's holding in *Ryan Stevedoring Co. v. Pan-Atlantic Stea*, 350 U.S. 124, 76 S. Ct. 232, 100 L. Ed. 133 (1956), entitled a shipowner to indemnification for damages it paid to a passenger because the local port authority failed to load passengers aboard the cruise ship in a workmanlike manner. *See Vierling*, 339 F.3d at 1310. That Court discussed the duty of a shipowner to its passengers in *dicta*. *See id.* at 1319. In doing so, it relied in part upon pre-*Smith* authority from the Fifth Circuit. The Eleventh Circuit's decision in *Vierling*, while appealing, is not binding upon this Court. Additionally, Plaintiff has failed to show that under the circumstances of this case "reasonable care" amounts to a "high degree of care." *See Smith*, 791 F.2d at 421. Tobias owed Plaintiff a duty of reasonable care under the circumstances.

While this Court notes that it would consider preferable the rule stated by the Eleventh Circuit rather than the rule pronounced by the Fifth Circuit in *Smith*, the Court is bound by the jurisprudence of the Fifth Circuit, and the Fifth Circuit's position in this matter is clear: shipowners only owe to

passengers a duty of exercising reasonable care under the circumstances. *See Smith*, 791 F.2d at 421. Plaintiff is of course welcome to appeal this decision to the Circuit, as the question encompasses a policy decision that resides squarely within the purview of the Fifth Circuit and not that of a district judge.

*B. Weather and Sea Conditions at the Time of the Alleged Injury*

Tobias argues that there is no genuine issue of material fact as to whether it breached its duty because there is no evidence that the weather or sea conditions were rough at the time of the alleged accident or rendered the transfer unsafe. Thus, Tobias did not fail to exercise reasonable care under the circumstances by permitting the transfer to take place. In response, Plaintiff argues that there is a genuine issue of material fact with respect to the weather and sea conditions at the time of his transfer from the MS JUDY to the platform.

Tobias' primary evidence that the sea and weather conditions were not rough at the time of the transfer comes from Plaintiff's deposition. At his deposition, Plaintiff testified that he did not consider the weather or sea conditions to be too rough to perform the transfer safely, and that he knew that if he had considered them to be too rough that he could have refused to be transferred to the platform and shut down the transferring operation. Additionally, Plaintiff testified that he did not have any criticism of the manner in which the MS JUDY assisted with the transfer. To further support its contention that the seas were not too rough, Tobias also offers evidence that Plaintiff's co-worker who was in the same personnel basket as Plaintiff during the transfer in question made the transfer without incident, and that four other workers transferred from the MS JUDY to the platform without incident after Plaintiff.

In response, Plaintiff points out that he also testified at his deposition that he thought that he was jerked up by a combination of the crane operator and the "boat going with the waves," and that he

estimated that at the time of the accident, the winds were blowing around 30 miles per hour and that the seas were seven to eight feet. Plaintiff points out that he testified that he was originally scheduled to get off at Galveston 209A, but the waves were too high so that he and the other workers were forced to get off at 209B. Plaintiff testified that everything at 209A was shut down. A deckhand of the MS JUDY, Kenneth Sealy, testified that the sea conditions were six to eight feet throughout the day. The captain of the MS JUDY, Kevin Delino, testified that the seas were eight to ten feet that day based on the Daily Operating Report, which he drafted. He also testified that rough seas could be six feet or higher.

The summary judgment evidence compels the conclusion that the actual weather and sea conditions remain in dispute. First, the deposition testimony and records would put the seas at anywhere from six to ten feet. Second, Plaintiff estimates that the winds were about 30 miles per hour at the time of the transfer, which Tobias does not refute. Third, most of the evidence as to the weather and sea conditions is from deposition testimony; neither Party has presented evidence from the National Oceanic and Atmospheric Association ("NOAA") or the United States Coast Guard to either confirm or deny the Parties claims.[1] Fourth, little evidence has been presented detailing the impact of the sea and weather conditions on the boat at the time of transfer.

As to Tobias' argument that Plaintiff's deposition testimony is dispositive of his case against it, the Court finds that this argument is without merit. In his deposition, Plaintiff stated that he did not consider the seas too rough to conduct a transfer. Plaintiff may give his perspective on the conditions

---

[1] The Court encourages the Parties to seek more concrete evidence of the conditions existed at the time of transfer than deposition testimony. The conditions at the time of the alleged accident can be refuted or confirmed by the surface weather observation reports of the U.S. Coast Guard or the National Oceanic and Atmospheric Association ("NOAA"). The surface weather observations tell at any given place in the Gulf of Mexico exactly what the weather and sea conditions were at any given time.

at the time of his allegedly accident, but that perspective is not determinative of those conditions. This is especially true in light of conflicting testimony as to the conditions themselves and the relative absence of evidence detailing the impact of the conditions on the MS JUDY and the platform at the time of the transfer. While Plaintiff's deposition testimony may impact the weight and credibility of the evidence that he presents at trial, that impact is a determination that must be left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

Additionally, the legal authority on what constitutes "rough seas" is relatively scant. It is a term of art often used but never defined. *See, e.g.*, *Tarlton v. Exxon*, 688 F.2d 973, 976–77 (5th Cir. 1982) ("[A] platform owner is not negligent for dispatching a supply vessel in six to eight foot seas, seas admittedly rough but not necessarily dangerous for loading or unloading. Such activity is not at all unusual at the myriad offshore platforms in the gulf."); *Hebron v. Union Oil Co. of Cal.*, 634 F.2d 245, 246 (5th Cir. 1981) (noting that seas of six to eight feet were considered "moderately rough, but not necessarily dangerous for loading and unloading equipment"); *Hodgen v. Forest Oil Corp.*, 862 F. Supp. 1552, 1556 (W.D. La. 1994) (finding seas of seven to nine feet during a swing rope transfer from a platform to a vessel constituted "rough seas"). A review of the case law reveals that there are no bright lines, and the Court finds that the inquiry as to the weather and sea conditions and the impact of those conditions on vessels and platforms operating in the Gulf of Mexico involves questions and inquiries of fact, not law. The dearth of case law on the matter further suggests to this Court that this is not an issue well-suited for summary judgment, but one best left to the trier of fact.

**IV. Conclusions**

Plaintiff has raised a genuine issue of material fact as to the roughness of the weather and sea conditions that existed at the time of the alleged accident, and whether Tobias' role in the decision to transfer Plaintiff via personnel basket in the face of those conditions breached its duty of reasonable

care under the circumstances. Tobias may very well end up prevailing at trial, but it cannot do so at this juncture as a matter of law. For these reasons and the reasons stated above, Defendant Tobias, Inc.'s Motion for Summary Judgment is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 20th day of December, 2005, at Galveston, Texas.

Samuel B. Kent
United States District Judge