IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HUBERT CHAMPAGNE, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-299 |
| | § | |
| TETRA APPLIED TECHNOLOGIES | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DANOS & CUROLE MARINE CONTRACTORS, INC.'S MOTION
FOR SUMMARY JUDGMENT

This case arises out of injuries allegedly sustained by Plaintiff while being transported via personnel basket from the deck of the M/V MISS JUDY ("MISS JUDY") to a stationary drilling platform located on the Outer Continental Shelf ("OCS"). Defendant Danos & Curole Marine Contractors, Inc.'s ("Danos") employee was operating the crane that transported Plaintiff from the MISS JUDY to the drilling platform at the time of his alleged accident. Now before the Court is Danos's Motion for Summary Judgment. For the following reasons, Danos's Motion is **GRANTED**.[1]

**I. Background**

Hubert Champagne, Jr. ("Plaintiff"), a wireline employee for Halliburton, alleges that he sustained injuries to his back, neck, and body on or about January 12, 2003, while making a personnel basket transfer from the deck of the MISS JUDY to the Exxon Mobil Platform located at Galveston 209 OSG-3229 ("Exxon's platform") offshore of Texas on the OCS. Plaintiff claims that when the

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

personnel basket transfer commenced, he was "jerked off the boat." Plaintiff claims that the jerking of the personnel basket contributed to and/or caused his alleged injuries, but he also claims that all of the defendants named in this case were negligent because of their joint decision to transfer Plaintiff from the MISS JUDY to the platform in hazardous weather and sea conditions. In his deposition, Plaintiff attributed the alleged jerking of the personnel basket to a combination of the crane operator and the movement of the MISS JUDY in the water.

According to Plaintiff, his injury allegedly occurred on or around January 12, 2003. On January 12, 2004, Plaintiff brought suit in the 122nd Judicial District Court of Galveston County, Texas, against a number of defendants. On April 11, 2005, over two years after the date of the alleged injury, Plaintiff amended his petition in state court and named Danos as a defendant. On May 27, 2005, Danos removed the entire cause of action to this Court. Plaintiff did not challenge the removal of his lawsuit to this Court.

On November 21, 2005, Danos filed its Motion for Summary Judgment, arguing that Plaintiff's claims against it are barred by the applicable two-year statute of limitations. This argument rests on Danos's underlying contention that Plaintiff's claims against it are governed by the Outer Continental Shelf Lands Act ("OCSLA"), codified at 43 U.S.C. §§ 1331–1356. Originally, Plaintiff pled his claims against Danos under general maritime law, not OCSLA. In his Response, Plaintiff argues that general maritime law applies, and as such, his claims against Danos are not barred by the applicable three-year statute of limitations under federal maritime law. After thoughtfully considering the Motion, Plaintiff's Response thereto, the relevant evidence, and the applicable law, the Court concludes that Danos's Motion for Summary judgment is hereby **GRANTED**.

## II.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The court must view all evidence in the light most favorable to the non-movant.  *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied* 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512.  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  *See id.* at 255, 106 S. Ct. at 2513.

## III.  Application of OCSLA Versus General Maritime Law

This case presents the difficult question of what law governs when an injury occurs during a personnel basket transfer from a vessel to a fixed platform on the OCS.  The Court has been able to

3

avoid this turbid issue in the past, but in this case, it is squarely before the Court.  *See Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 2d 821, 823 n.1 (S.D. Tex. 2001).

Danos' argument is straightforward: OCSLA governs Plaintiff's claims against it, Texas state law applies as surrogate federal law, and under Texas law, Plaintiff's claims are barred by the applicable two-year statute of limitations.  Plaintiff, relying on the well-settled principle that he is the master of his complaint, argues that he has decided to proceed under general maritime law and that a sufficient maritime nexus exists for him to do so.  It is undisputed that Plaintiff filed his claims against Danos over two years after the date of his alleged injury, but less than three years from that date.  Thus, if Plaintiff's claims are governed by Texas law through OCSLA, they are barred.  On the other hand, if Plaintiff's claims are governed by maritime law, then they were filed within the applicable three-year statute of limitations, and his suit against Danos may proceed.

## A. OCSLA Governs Plaintiff's Claims Against Danos

OCSLA "provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond territorial waters of the states on the [OCS.]"  *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 495 (5th Cir. 2002).  "Congress enacted OCSLA to provide a federal body of law to govern operations on the [OCS]."  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999).  The Fifth Circuit applies a broad "but-for" test to determine whether a cause of action arises under OCSLA.  *See id.* at 350 (citing *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988)).  If an individual's employment furthers mineral development on the OCS, and "but for" that employment the individual would not have been injured, OCSLA applies.  *See id.*  In this case, Plaintiff's alleged injuries arose out of an operation involving the production of minerals on the OCS.  Plaintiff was a wireline employee for Halliburton, and at the relevant time had been dispatched

4

to an offshore platform in furtherance of oil and gas production activities.  "But for" his intended work on Exxon's platform, his alleged injuries would not have occurred.  Therefore, this Court has federal jurisdiction by means of OCSLA over Plaintiff's claims.  *See Theriot v. BP Corp. N. Am., Inc.*, 216 F. Supp. 2d 651, 653 (S.D. Tex. 2002).

Nevertheless, the Court's inquiry is not over.  "While OCSLA was intended to apply to the full range of disputes that might occur on the OCS, it was not intended to displace general maritime law."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).  If both OCSLA and general maritime law could apply, then the case is to be governed by general maritime law.  *See id.*  Additionally, OCSLA provides for the incorporation of state law as surrogate federal law when three conditions are met: (1) the controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed or artificial structure permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the applicable state law must not be inconsistent with federal law.  *See Union Tex. Petroleum Corp. v. PLT Engineering*, 895 F.2d 1043, 1047 (5th Cir. 1990) ("*PLT*").  *See also* 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352, 355–59, 89 S. Ct. 1835, 1837–39, 23 L. Ed. 2d 360 (1969).  In this case, only the first two conditions are in dispute.[2]

*1.  OCSLA Situs*

Plaintiff alleges that he was injured when the personnel basket he was traveling in was "jerked up" off the boat.  At his deposition, he described the alleged jerk as "massive."  He also testified that

---

[2]The Court notes that when a plaintiff sues multiple defendants, as in this case, the "jurisdictional inquiry must be undertaken discreetly for each defendant."  *Debellefeuille*, 139 F. Supp. at 824.  Thus, the outcome of this Motion has no bearing on Plaintiff's claims against the other defendants in this matter.

his foot was in the "donut" of the basket and that he was grabbing the netting with his hands when he was lifted off the boat and allegedly jerked. The fact that he was in contact with the basket at the time of the alleged injury is undisputed. Therefore, Plaintiff's attempt to recharacterize the injury as occurring on the deck of the vessel is unpersuasive and inaccurate. There is no dispute that Plaintiff was connected to the personnel basket at the time of the alleged injury and that through the basket he was physically connected to the crane and Exxon's platform. Under these facts, applicable Fifth Circuit precedent *compels* the conclusion that the accident took place on a situs covered by OCSLA. *See Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1527 (5th Cir. 1996) (finding OCSLA situs where platform worker injured during swing rope transfer from a platform to the vessel because he "was in physical contact with the rope, a portion of the platform" when he landed on the vessel); *Hollier v. Union Texas Petroleum Corp.*, 972 F.2d 662, 664–65 (5th Cir. 1992) (finding OCSLA situs where worker was in physical contact with the platform at the time of his injury). *See also Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949–50 (E.D. La. 1997) (court held that OCSLA applied to plaintiff whose injury occurred as the personnel basket lifted him from the vessel to another vessel permanently moored to the platform on the OCS when the basket slid against the starboard rail of the original vessel).

In *Hollier v. Union Texas Petroleum Corp.*, the Fifth Circuit held that an accident where an offshore oil worker was killed while transferring from a stationary crew boat to a well platform occurred on a situs covered by OCSLA. *Id.* at 664. The key fact for the Circuit was that the worker was in *physical contact* with the platform at the time of his injury. *Id.* at 665. The worker in that case was killed when, as he was crossing from the crew boat resting next to the platform onto the platform, he slipped between the boat and the platform and was crushed and then drowned. *Id.* at 664. In

6

*Hodgen v. Forest Oil Corp.*, the platform worker was injured when he attempted to make a swing rope transfer back onto the vessel from the platform, and as he did so the vessel "rose quickly as [he] landed" which caused an impact that lead to partial paralysis. *Hodgen*, 87 F.3d at 1516. The Court finds that these cases clearly and specifically control the matter at hand, and that because Plaintiff was in contact with the platform, the alleged accident took place on a situs covered by OCSLA.

Plaintiff relies upon the Supreme Court's decision in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219, 106 S. Ct. 2485, 2491, 91 L. Ed. 2d 174 (1986), in his argument that OCSLA does not apply to a worker, such as himself, who is injured on the high seas, and that his status as a platform worker should have no relevance to the determination of whether OCSLA applies to his claims against Danos. This reliance is misguided. In *Offshore Logistics*, the platform workers' fatal accident occurred several miles from the fixed platform on the high seas when a helicopter crashed into the water. The Supreme Court held that the Death on the High Seas Act governed the survivors claims rather than OCSLA. If Plaintiff's injury had occurred several miles from Exxon's platform in the Gulf of Mexico, i.e., if the vessel had capsized in the Gulf several miles away from the platform, the Court would be more persuaded that *Offshore Logistics* controlled the matter. However, since Plaintiff's injury occurred during the course of a personnel basket transfer when he was physically connected to the platform, *Offshore Logistics* does not control. *See Hollier*, 972 F.2d at 665 ("While the decedents in *Offshore Logistics* were injured miles away from any platform, Hollier was in physical contact with the platform at the time of his injury.") It is not Plaintiff's status as a platform worker that controls the question, it is the fact that he was in physical contact with the platform at the time of his injury.

    *2. No Independent Application of Maritime Law*

To establish maritime jurisdiction and demonstrate the independent application of maritime law, a plaintiff must show both a maritime situs and a connection to traditional maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995). To determine whether an accident has a sufficient connection to maritime activity, the Court must first assess whether the incident has a potentially disruptive impact on maritime commerce. *Id.* Second, the Court must assess whether "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.*

### a. Maritime Location

The maritime situs test requires that Plaintiff show that his injury occurred on navigable waters or, if suffered on land, that it was caused by a vessel on navigable waters. *See Hufnagel*, 182 F.3d at 351. There is no dispute that the MISS JUDY was engaged in maritime commerce and on navigable waters at the time of the injury, and it is undisputed that at the time of the alleged injury, Plaintiff was in the personnel transfer basket. Plaintiff claims that he was injured when the basket was "jerked up" off the boat and at one point in his deposition he attributes the "jerking" to the crane operator's operation of the basket and the movement of the MISS JUDY in the water. Whether the vessel's movement and the weather and sea conditions actually contributed to the alleged injury is still a disputed issue of material fact, as is whether Plaintiff was still physically in contact with the vessel at the time of his injury. Therefore, the Court will assume for the moment that Plaintiff's accident meets the maritime location test and that he was injured by a vessel on navigable waters.

### b. Maritime Nexus

The Court engages in a two-part inquiry in determining whether a sufficient maritime nexus

exists: (1)  whether the incident has a potentially disruptive impact on maritime commerce, and (2)

whether "the general character of the activity giving rise to the incident shows a substantial

relationship to traditional maritime activity."  *Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048.  This

incident lacks a sufficient maritime nexus to bring it within the Court's admiralty jurisdiction.

The Court finds, first, that this incident did not have a potentially disruptive impact on

maritime commerce.  *See Solet v. CNG Producing Co.*, 908 F. Supp. 375, 378 (E.D. La. 1995) (noting

that it is

"difficult to envision any potential effects to maritime commerce, and certainly no more than would

arise from any crane activity near navigable water" where a contract welder on a fixed offshore

platform was allegedly injured during his personnel basket transfer).  Plaintiff was a wireline

employee sent out to work on a platform and assist Exxon in its oil and gas production activities on

the OCS.  Danos operated the platform's crane and employed the crane operator working at the time

of Plaintiff's accident.  In the context of maritime contracts, the Fifth Circuit has stated that "[e]very

person who performs work on a platform must, in fact, step onto it..[and] [w]e decline to find that this

act constitutes a separable maritime obligation in a contract to perform services on a platform."

*Hollier*, 972 F.2d at 665.  Likewise, this Court declines to find that the fact that the accident occurred

during a personnel basket transfer subjects a crane operator to maritime law.  Additional facts must

be present to demonstrate a potential impact on maritime commerce beyond the mere fact that the

object of the transfer was picked up from a vessel for transport to a platform to facilitate and assist

in oil and gas production.  If a crane operator, through his negligence, injures a platform worker

during a personnel basket transfer from a vessel to a platform, the effects of that incident will be felt

by those who operate and own the platform and who might subsequently be denied the benefit or

services of the worker injured.  Thus, under the facts of this case, the immediate impact on any economic activity is most likely to be felt by those operating on the platform, not on the fortuitously transporting vessel.

Additionally, the Court finds that the general character of the incident that gave rise to this lawsuit does not show a substantial relationship to traditional maritime activity.  This incident came about during a  personnel basket transfer by a crane attached to a fixed platform on the OCS.  As explained by the Fifth Circuit: "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce.  For this reason, the Court has compared fixed platforms to piers, jetties, bridges, and ramps running into the sea, which have not supported the application of maritime law." *Hufnagel*, 182 F.3d at 351–52 (citing *Rodrigue*, 395 U.S. at 359–61, 89 S. Ct. at 1839–40).  "Moreover, being transported in a basket lifted by a crane mounted on an oil platform does not implicate the national interest in uniformity of law and remedies for those facing the perils of maritime transportation." *Solet*, 908 F. Supp. at 378.  Danos was not providing services to the MISS JUDY, Danos was under contract with Exxon and was operating on Exxon's platform at Exxon's bequest.  Danos transported Plaintiff in the execution of its obligations to Exxon, not a vessel, and that activity does not demonstrate a substantial relationship to traditional maritime activity. *See generally Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731 (W.D. La. 2001).

The cases relied upon by Plaintiff in his argument for the application of general maritime law are distinguishable from the case at hand.  They involve situations where the crane operators or platform owners were more intimately connected to traditional maritime activity or a vessel than in the present case. *See Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128–29 (5th Cir. 1988) (maritime law applied to crane operator who, prior to the day of seaman's accident, dropped the vessel's engine

10

on one of the vessel's ladders where seaman was later injured in the course of performing his crew duties); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 416–17 (S.D. Tex. 1993) (case remanded where there was no removal jurisdiction under OCSLA because the plaintiff suffered his injury on a mobile drilling vessel on high seas and maritime law governed his claims); *Hails v. Atlantic Richfield Co.*, 595 F. Supp. 948, 951 (W.D. La. 1984) (court concluded that admiralty jurisdiction existed and general maritime law applied to the platform worker's claims against a crane operator, platform owner and vessel where the worker was injured on navigable waters performing the traditional maritime activity of unloading a vessel a the platform owner's request).

Both the location test and the nexus test must be satisfied to invoke this Court's admiralty jurisdiction. Under the precise facts and circumstances of this case, the location test has been satisfied but not the nexus test. Therefore, federal maritime law does not apply by its own force to Plaintiff's claims against Danos, and OCSLA governs. The Court pauses to note that this conclusion should not be read too broadly. The Court finds only that federal maritime law does not apply under the precise facts and circumstances of this particular case, and if any number of facts had been different, those different facts might have compelled a very different conclusion.

### B. Statute of Limitations

Under OCSLA, the law of the adjacent state applies when all three conditions of the *PLT* test are met. *See PLT*, 895 F.2d at 1047. In this case, all three requirements are met: (1) the accident occurred on an OCSLA situs; (2) federal maritime law does not apply of its own force; and (3) Texas state law is not inconsistent with OCSLA or other federal laws and regulations. *See id.* The Court, therefore, under OCSLA, applies the Texas statute of limitations for personal injury cases. Under Texas law, lawsuits for personal injuries must be brought within two years. *See* TEX. CIV. PRAC. &

11

REM. CODE § 16.003 (Vernon 2002).  Plaintiff was allegedly injured on or about January 12, 2003, but did not file suit against Danos until April 11, 2005, well over two years after his cause of action accrued.  Therefore, his claims against Danos are barred by the applicable statute of limitations as a matter of law.

## IV.  Conclusions

Under the facts and circumstances of this case, Plaintiff's claims against Defendant Danos & Curole Marine Contractors, Inc. are governed by Texas state law pursuant to OCSLA.  The applicable Texas statute of limitations for personal injuries is two years.  Plaintiff filed suit against Danos after the two-year statute of limitations had expired.  Therefore, his claims against Danos are barred.  For those reasons and the reasons stated above, Defendant Danos' Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims against Danos are **DISMISSED WITH PREJUDICE**.  Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.  A Final Judgment on this and all remaining claims will be issued in due course.

**IT IS SO ORDERED**.

**DONE** this 6th day of February, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge

12